This next case is Kimberly Grippa v. Ronald Rubin. Justin Miller is here for the appellate. Rubin, Ashley Richardson is here for Grippa and Mr. Miller, you may begin. Good morning and may it please the court. My name is Justin Miller and I was appointed to represent the appellate Mr. Rubin. This case is about narrow issues of immunity and two letters sent by Mr. Rubin's attorney. The letters do not mention Ms. Grippa. Her identity can only be determined by reading the attached Mitchell complaint, which everyone agrees is absolutely privileged. The district court conceded that if the letters merely attached the Mitchell complaint, then the absolute privilege would apply. But the district court erred in allowing that privilege document to still be used as evidence of defamation. The Supreme Court recently said that similar tactics would eviscerate absolute immunity. Even if the absolute privilege does not apply, the qualified privilege certainly does. The district court agreed that the purpose of the time letters was to convince executive branch officials to intervene. Where the circumstances are not in dispute, qualified immunity is a question of law and the district court erred in leaving it to the jury. These same letters could have been sent with the request that the recipient serve as a witness, expert, intervener, or amicus. What if Rubin's statements were made with express malice? And he intended the damage or reputation? Well, the burden would be on Ms. Grippa to show that. And it has to be the primary motive of the letters. The court here looked at what was before it and determined, quote, from appendix 459, based on the contents of the time letters, their purpose was to convince Governor DeSantis and General McGill to intervene in the investigation. The court's error was just deciding that that meant it was a jury question. But Florida law is clear that when the circumstances are not in dispute as they are here, everyone knows who the letters were sent to. That's not, there's no question about that. So a reasonable jury couldn't decide that the statements were made with malice? Well, it's a, if we look at, for example, note RV Galbraith, it says that when the circumstances surrounding a defamatory communication are undisputed or are so clear under the evidence as to be unquestionable, then the question of whether the occasion upon which they were spoken was privileged is a question of law to be decided by the court. So it really should have never gone to the jury. Delmonico also said whether a statement is connected with or related to the subject of inquiry is a threshold determination to be made by a judge. So it's really, I mean, it never should have gone to the jury in the first place. On the qualified privilege, I see how we have jurisdiction over the absolute privilege arguments. But on the qualified privilege, it looks like under Florida law, that's more of a defense to a defamation action than an immunity. What's your best argument that we have jurisdiction over this issue? Yes, Your Honor, I think we have two arguments there. First, it is described as an affirmative defense, but I don't think that's the end of the story. We look how they treat it. Section 1983, qualified immunity, is also a defense, but it's frequently reviewed. If you look at Delmonico, how they're treating it, the court just looks to, was the statement made in the course of a judicial proceeding? And then two, was it connected with or related to the subject of inquiry in the underlying lawsuit? And then if both of those are true, then they look, was the statement made during formal proceedings, then it's absolute? Was it made outside of those, then it's qualified. So I think it's treated the same. And then the second argument we'd have is, if you really don't think that we have qualified immunity, this court still has pendant appellate jurisdiction when issues are so intertwined. That's Smith v. LaPage, 834 F. 3rd, 1285. So then you would say your absolute immunity argument is inextricably intertwined with the qualified immunity argument? I mean, that's your, what you're saying? Yeah, that'd be our second argument. Here's the question I have about that. I mean, this malice issue, which is the issue that the district court said, you know, that's why it needs to go to a jury, that's kind of irrelevant for the absolute immunity argument though, right? Right. And I don't think we even need to get to qualified privilege. Right. Well, I guess I'm just saying, so, I mean, if, with respect to the jurisdiction, it seems like they're not really intertwined because it's not as if the district court said, for example, that there was no judicial proceeding or something like that, where to answer the absolute immunity, we'd have to address the same issue. I mean, here on the second issue, it's a completely separate question about malice that is ultimately the basis of the district court's decision. Right. And I think ultimately it's a discretionary question here. That same Smith decision says that they can be inextricably intertwined when they, quote, So I think that the court can and should reach the qualified privilege issue. But to be clear, I think that this case is open and shut on the absolute litigation privilege issue. Really, it just begins and ends with two points. One, transmission and republication does not break the absolute privilege. That's the Stewart case where the attorney sent a copy of a notice of claim that he had filed to a reporter. And then two, you can't use absolutely privileged statements as evidence. That's just an end run, as the court said in Fridovich. And then this was also thoroughly discussed in similar circumstances in the Trump v. United States case this term. But if we turn to Fridovich, it says a plaintiff is not permitted to make an end run around a successfully invoked defamation privilege by simply renaming the cause of action and replating the same facts. If the sole basis of complaint is a privileged defamatory statement, then no separate cause of action exists. And a privilege will not prevent recovery upon separate causes of action only when they are properly pled upon existence of independent facts. And the simple fact here is that if you take away this absolutely privileged document, there is absolutely nothing to suggest that Ms. Gripa is referred to at all in these letters. And the district court erred in allowing this absolutely privileged, the absolutely privileged statements in this document to still be considered. The absolute litigation privilege should have barred that from all consideration, and the case should have been dismissed. There's simply no case without these statements. Yeah, let me just ask you. So in Stewart, which I agree is your best case, I mean, the distinction between this case and Stewart is that in Stewart, there was a legal requirement that the attorney provide the documents. Correct me if I'm wrong, but I thought there was like a legal requirement that the attorney provide the documents to the paper. That's incorrect, Your Honor. If you look at the, there was a filing, the notice of claim was required to be, was a preliminary event for the lawsuit. Stewart was about, there were some inmates, they'd filed some claims. One of the inmates' attorneys was required to file a notice of claim. If you read the Stewart opinion, it's with an agency. And then towards the end of that opinion, it discusses the attorney, Hurtado, and that he took that notice of claim that he had filed with the agency, and he provided it to a reporter. And it doesn't explicitly say, you know, what if anything he said along with providing that, but I highly doubt, it'd be completely unreasonable to think that he just filed a, or you know, sent this email to a reporter with nothing in the body, nothing in the subject, and just an attachment. You have to at least be able to say, you know, why are we sending you this document? And that's what these fine letters are saying. You're reaching out to the governor and some of his cabinet officials and saying, look, we have, there's this investigation, we think you'd be interested in it, and we think you should be able to take control of it. And if anything, it went far short of what the actual Mitchell complaint said. It said, Patronus and his enterprise, or Patronus and his inner circle. There's nothing about those words that suggests Ms. Grippa. Nothing in the record would suggest that. And if you, you know, the judge had said Patronus and his criminal enterprise. That's not the wording. Again, the letters went far short of what was actually in there. And you have to be able to at least, you know, tell the recipient why you're sending them this document. If we look at some of the other cases that I think would, you know, fall on the same spectrum of Stewart, I think this case is Stewart. If you look at some of the other ones, Ball v. Delites, Enterprises from the 4th District Court of Appeals. There's also another case that is in the same vein called Young v. Kopchak, 368 South 3rd, 1001, also from the 4th District Court of Appeals. And there, they were looking at, it wasn't just sending it to a reporter. This was just a general broadcast in those cases. In Ball, you had just a website publication about unrelated, you know, unrelated allegations. In Young, it was a Facebook post that was just getting into unrelated matter. Here it's Stewart. You're just providing this statement. And just like in Friedovich, it has to be independent facts. If you look at the time letters, there is no way you can have a defamation claim in this case without looking at the absolutely privileged Mitchell complaint. So again, I think that this case begins and ends with that absolute litigation privilege. If we really want to go to the qualified privilege, again, I think the court erred in sending that to the jury. Let me ask you this about the ramifications of your argument. As I understand your argument, any time you look at or have to look at a complaint, even if it's verbatim produced in the letter, that's absolutely privileged? I mean, what's the difference between attaching a copy, as they did here, or in closing, and excerpts? Mr. Ryan, I think that the, those statements would be privileged as well. Absolutely privileged. So all you got to do is file a lawsuit, and then you can send it to the newspaper, buy ads in the newspaper, whatnot. Right, and if we look at the Florida cases, this is a recognition that there's safeguards in place in court, there's Rule 11, there's, you know, a party can object. Here, you know, the party that could have objected, you know, when he says Patronus and his enterprise, Patronus was copied on these letters, you know, could have reached out about it. But, you know, these complaints, that's the reason we have it, is to preserve full and fair litigation proceedings, to be able to give good information. So yes, I think that those would be privileged. And I think it's important if, just to look by way of analogy of that Trump v. United States case, there they said, if you use immune conduct as evidence for limited and specified purposes, such as knowledge or notice, it threatens to eviscerate the immunity. Here they want it for the limited purpose of identification. I think it's in the same vein, and again, it would just threaten to eviscerate it. It would allow you, quote, to indirectly do what he cannot do directly, inviting the jury to examine acts that are subject to this immunity. And again, Florida has held that in Fridovich. I think that this litigation privilege is clear. If this court had any doubt, it of course could certify it. But I think we went on the absolute litigation issue. All right. Any other questions? I'll reserve for a little while. Thank you, Mr. Miller. We'll hear from Ms. Richardson. All right. May it please the Court. My name is Ashley Richardson, and I'm here for Ms. Gripa. I think that the jurisdictional question is, we were discussing it, or my counsel across the aisle was discussing it. They are separate. We have the issue of absolute privilege, and we have the issue of qualified privilege. And I think there's a reasonable argument to be made that the absolute privilege is probably properly before this court at the time. Qualified privilege here is going to turn on a fact issue, and on summary judgment, this is not a final order. We shouldn't be here, with all due respect to the Court, on the qualified privilege issue. Now, as far as the absolute privilege, it absolutely does not apply here. And I think there's a discussion in Delmonico where they're creating the limited qualified privilege that would apply that's really instructive here. And it says that, where an attorney steps outside both the courtroom and the formal discovery process to investigate a claim, this court precedent does not support an extension of absolute privilege. There's no dispute here that this was not part of the judicial process. There was no requirement, there was no necessity to send this correspondence and attach the complaint and send it to DeSantis and others within his administration. In fact, the teen time letters make clear on their face that the reason they're sending the complaint is to say a couple of things. I'm being investigated, Mr. Rubin, as being investigated for false accusations. I want you to intervene and stop that. And also, the people who are accusing me are criminals. It doesn't just merely attach the complaint, it lists specific crimes that Mr. Rubin and his counsel believe that these individuals have committed. It also instructs them or asks them to conduct an investigation into those individuals and references their ongoing credibility. And that's where we get into, this is not part of the judicial process, the two things are totally separate. So the absolute privilege absolutely does not apply. Delmonico's further instructive on that issue because there, they looked at the issue of absolute privilege when it comes to an attorney engaging in an ex parte communication with a potential non-party witness. That's something, as attorneys, we're all going to have to do in order to advance our client's claims. However, it wasn't during the course of a judicial proceeding, there was no judge, the other side didn't have the opportunity to be heard. So the court knew that that kind of action needed to be privileged, but it wasn't absolutely privileged. And that's where qualified privilege comes in. Would absolute privilege apply in the case of, let's say, a lawsuit is contemplated and there's a demand letter sent? I think that there's a solid argument that that would apply. Because it's going to be, there's a lot of cases out there that settlement negotiations and depositions and other parts of the sort of litigation process, for example, sending a pre-suit notice would be covered under that absolute privilege. It doesn't apply here, but I think there's a solid argument to be made that absolute privilege would probably cover that particular process. And if not, qualified privilege certainly would in that, because it's an attorney acting on behalf of this furtherance of the judicial process. That's not what happened here. The TANG letters make clear that Reuben wants somebody to step in, stop the investigation against him, and instead investigate the people who made complaints about him. Let me ask you, so Mr. Miller said that really the complaint here, like if there's any defamatory statements that come from the complaint, this is just like basically a cover letter that says, look at this complaint. Like, what do you say about that? That's absolutely not true. If you look at the DeSantis letter, it's a full two pages long, and it opens with three different criminal activities. I don't have the specific statutes in front of me, but three different proposed criminal violations that he believes this enterprise has engaged in. He refers to their lack of credibility, asks that they be investigated for these misdeeds. And yes, it does refer the reader to the complaint, because the complaint's quite lengthy. And instead of sort of reciting those facts over again in the letters, it does, and that's where Ms. Gripa is mentioned, but that was the distinction that the district court made. This wasn't merely, hey, Governor DeSantis, we just filed this lawsuit. That probably would be privileged, and we wouldn't be here if that was the case. This letter goes significantly further than that. So is that the way you would distinguish Stewart? I mean, what do you say about Stewart? Yeah, absolutely. There's nothing in Stewart that says, unfortunately for us in this position, whether or not additional information was sent. But if you just forwarded a copy of the legal proceeding, the complaint, that's probably going to be privileged. That's not what happened here. And as Judge Carnes brought up at the very end of the Planner argument, basically anybody with a few hundred dollars and the time to sit down and draft a complaint could file something with the court and then blast it out, either on social media, to the newspaper, to the governor, whoever they felt like, and then go, it's privileged. That's how far what the other side is asking for would take this particular privilege. And that is in no way contemplated by any of the case law that either side has submitted. If we decide it's qualified litigation privilege, your statement on page 31 of your red brief, you said that Rubin's, quote, purpose for broadcasting was to derail the investigation against him, end of quote. Doesn't that hurt you on the express malice element? I don't think that it does, because I think if you read the letter as a whole, it also asks that the people who have made complaints against him be investigated for what he is accusing them of. So what you're saying is a component of derailing the investigation against him was casting down on the credibility of Ms. Gripple. Correct. Utilizing the sort of the state resources in order to discredit them for future purposes. Yeah, I'm not sure that we can get to, I guess, the qualified privilege, but it does seem like the malice, I mean, I guess, give me your best case for malice, because it seems like, one, this was an attorney that sent the letter, right, it wasn't the client himself. And two, as Judge Cards pointed out, I mean, this was not, it wasn't to a newspaper, it wasn't to disseminate broadly, it wasn't, I mean, just kind of what's your best case for malice? Well, so for, on the, taking the second one first, he sent the letter to DeSantis, and I believe there was one other individual who the district court found actually had the power to intervene in this investigation. There were other people who didn't, which is why the district court found that the publication was not proper, because he sent the letter and this request and these insinuations that these folks had committed crimes to people who couldn't actually do anything to solve his problem. Three people, one. Three people out of the five letters that were sent don't have the power to do anything. So that's going to, that, in our view, shows this malice, like, we're going to, we're going to send this out to as many people as we can in order to tarnish the credibility and reputations of the people who've made accusations against me. And I'm sorry, I forgot the first half of your question. Well, I just, the fact that it's the lawyer, I mean, it seems, it seems, I guess maybe that, maybe I'm not right about this, but it seems odd to say you maliciously defamed someone through your attorney's actions. And that's, the district court touched on that briefly. The whole issue of vicarious liability.  And I mean, let's just not really, you know, that's the thing. Like, I don't, I don't want to look at it as, like, a pure, like, vicarious liability thing. It's more just, can you have the, can you, can you give him a, what's the evidence for malicious intent when it's like, I, you know, my lawyer did it. So the district court relied on a couple of things that we obviously believe are, were accurate and correctly done below. One is the way the attorney phrases the letter, our, we, he's referencing the position as if it was a group decision. And then we have other evidence and emails and things of that nature that show that Rubin was extremely involved in the process of directing those that performed work for him in how to conduct that work. And that's what the district court said, that this is a disputed issue. In fact, both on the malice issue and on the vicarious liability or agency issue, that the jury's going to have to suss that out. So that's, that's our best argument on that one. Okay. I mean, have you sued the lawyer too? I don't believe so. Okay. Apologize.  I thought you guys had an appellate counsel. No, that's fine. Yeah. But no, my understanding is no, we have not. It was just against Mr. Rubin. So as I said, the, the issue of absolute privilege I think is completely dead in the water. There's no way to, and to do so would drastically open up the issue of absolute privilege to be sort of abused in the future. This was not part of a judicial proceeding and in order to get Governor DeSantis to intervene versus the lawsuit, one doesn't have to happen in order for the other one to exist. Absolute privilege simply does not apply. But as for qualified privilege, we had a couple of issues below. The first being that in his initial papers, Mr. Rubin requested that the district court apply the traditional five-step analysis, which is what the district court did and came to the conclusion that publication was not proper, therefore summary judgments denied on the qualified privilege issue because he sent the letter to more than 50% of the people he sent the letter to. He couldn't do anything about that or intervene in the investigation in any way. Later on, I believe, and it was in its motion to reconsider, Mr. Rubin says that we need to apply this Delmonico test, which is just a one-step, doesn't have any kind of basis or relation to the judicial proceeding. The problem with that is that Delmonico itself states that it's an incredibly narrow exception to the privilege issue and that is to protect attorneys during the litigation process who have to go out and do this sort of ex parte work in order to adequately represent their clients, but it's not necessarily governed by absolute privilege. That's not what we have here. This attorney was not performing any work relative to that complaint. He wasn't saying, hey, Governor DeSantis, you might be a witness, preserve these documents, we expect to interview you soon, you're going to be called for a deposition. This was in no way related to the litigation except to attempt to get these folks investigated to undermine their credibility, which again goes to the issue of malice. So, our position would be qualified immunity doesn't apply to the extent it's even properly before this court at the time because it is a factual issue and that, given that it was a summary judgment and a non-final order, it's not properly before the court as much as we are all enjoying our time here. So, and again, as opposing counsel said at the beginning, this is actually a very narrow, very specific issue and unfortunately, no privilege is going to apply and the district court got it right. This needs to be submitted to the jury so that these factual issues can be sussed out. We would thus, unless there are additional questions from the panel, request that this court uphold the district court's ruling and that's the end for me. Thank you. Mr. Miller, reserve some time for rebuttal. Just a few quick points in rebuttal. My friend here on the other side stood up and said, look at this letter, you know, there's two pages. It mentions criminal activities and then said, refer reader to the complaint. I challenge anybody to look at those letters and make a defamation case for Ms. Gripa without referring to the complaint. My friend said, you know, this was not part of the judicial process, pointing at the letter. Looking at Delmonico and every single one of these cases, you're looking at whether the statements were made of the judicial process and the only statements that even come close to mentioning Ms. Gripa were made in a complaint as part of the judicial process. And there's no parade of horribles of, you know, filing, you know, a ridiculous complaint and then going and just blasting it through all the newspapers. You're going to be sanctioned off the planet. There's rule 11, there's contempt, there's so many inherent proceedings and this is mentioned in Delmonico and all those line of cases. So just, this is an open and shut absolute immunity issue. There is zero case without the absolutely privileged complaint. And then if we want to look at the, in qualified, if we want to look at the circumstances, the circumstances here are undisputed and when they're undisputed, it's a question of law, not for the jury. We look at the people. If you look at the append, you know, who are these extra people? This wasn't just blasted in a Facebook group like in Young or on a website like in Ball. They were the people, there was five people, the two people that could intervene. The first, Patronus, who was mentioned in it and who this is all about. And then if you look at Appendix 126, the people who would actually vote on whether to retain Mr. Rubin or not. That's it. And most of them were members of the cabinet. Why now was Patronus, in fact, he was mentioned in it. So what? Why was he copied with this? What was the purpose? What was the motivation? What was the goal? He's also able to vote him and the Attorney General, Ashley Moody, are able to vote on whether to retain him. So the ultimate outcome of this investigation. To retain him. Sorry, Your Honor, to retain Mr. Rubin. So at the conclusion of the investigation, Moody, DeSantis, Patronus are all going to have a say in whether, you know, the ultimate outcome of this investigation. And when the circumstances are not in dispute, there is no dispute about what the circumstances are here. I'd refer the court to ARCO Plumbing Corp. It's 230 South 3rd, 520, the Florida 3rd District case. And there they show what, you know, questionable circumstances look like. It's not this case. Everyone knows who it was sent to. And this was a question of law. Again, this case is open and shut on the absolute litigation issue. And you can't have the case without the complaint that is absolutely privileged. No further questions. Thank you for your time. All right. Thank you. Thank you. Well, Mr. Miller, I see you were appointed by the court to represent Mr. Rubin, and the court thanks you for your service. Thank you. The court is in recess until 9 o'clock tomorrow morning.